SOLOMON B. CERA (State Bar No. 99467)
LOUIS A. KESSLER (State Bar No. 243703)
CERA LLP
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Fax: (415) 777-5189
Email: scera@cerallp.com
Email: lakessler@cerallp.com

*Liaison Counsel for Lead Plaintiff the Boilermaker
Blacksmith National Pension Trust*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| DENIS MULLIGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMPAX LABORATORIES, INC., LARRY HSU, and ARTHUR A. KOCH<br><br>Defendants.<br><br>(caption continued on next page) | Case No.: 13-cv-01037-EMC<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) APPROVAL OF THE PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Class Action<br><br>DATE:   June 11, 2015<br>TIME:   1:30 P.M.<br>CTRM:  Courtroom 5, 17th Floor<br>              The Honorable Edward M. Chen |

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

1996046.1

1  HAVERHILL RETIREMENT SYSTEM,        Case No.: 13-cv-01566-EMC
   Individually and on Behalf of All Others
2  Similarly Situated,

3          Plaintiff,

4          vs.

5  IMPAX LABORATORIES, INC., LARRY
   HSU, and ARTHUR A. KOCH
6
           Defendants.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

                                            NOTICE OF MOTION AND MOTION FOR FINAL
                                            APPROVAL OF CLASS ACTION SETTLEMENT
                                            CASE NUMBER: 13-cv-01037 EMC

# TABLE OF CONTENTS

**Page**

I.       PRELIMINARY STATEMENT ................................................................. 1

II.      BACKGROUND ..................................................................................... 4

      A.     History of the Action ................................................................. 4

            1.     Appointment as Lead Plaintiff ................................... 4

            2.     Investigation and Filing of the Complaint ................. 5

            3.     Discovery .................................................................... 7

            4.     Mediation and Settlement .......................................... 8

III.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS................................................................. 9

IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...... 11

      A.     The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's Length Settlement Negotiations.................................. 11

      B.     The Settlement is Substantively Fair and Satisfies Ninth Circuit Settlement Approval Standards........................................................ 12

            1.     The Strength of Lead Plaintiff's Case....................... 12

            2.     The Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement ......................... 15

            3.     The Risk of Maintaining Class Action Status Throughout Trial Supports Approval of the Settlement .......................... 16

            4.     The Amount Offered Supports Approval of the Settlement ..................... 17

            5.     The Extent of Discovery Completed and Stage of Proceedings Supports Approval of the Settlement .......................... 18

            6.     The Experience and Views of Counsel Supports Approval of the Settlement ................................................... 19

            7.     The Presence and Views of a Governmental Participant Supports Approval of the Settlement .......................... 20

            8.     The Reaction of Class Members to the Proposed Settlement Supports Approval of the Settlement .......................... 21

      C.     Lead Plaintiff, an Institutional Investor, Supports Approval of the Settlement.... 22

V.     THE COURT HAS THE AUTHORITY TO CERTIFY  THE SETTLEMENT CLASS 23

VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE................................... 24

VII.   CONCLUSION................................................................................. 25

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

i

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

1996046.1

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3
CASES

4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................23

*In re Apple Computer Sec. Litig.*,
   No. 84-CV-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...............................15

*In re Baan Co. Sec. Litig.*,
   284 F. Supp.2d 62 (D.D.C. 2003) ...........................................................17

*In re Broadcom Corp. Sec. Litig.*,
   No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976
   (C.D. Cal. Sept. 12, 2005)...................................................................24

*In re Charles Schwab Corp. Sec. Litig.*,
   No. C 08–01510, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011).............................10

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..............................................................24

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)..........................................................................14

*Eichenholtz v. Verifone Holdings, Inc.*,
   C07-06140MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008).............................4

*Ellis v. Naval Air Rework Facility*,
   87 F.R.D. 15 (N.D.Cal.1980) *aff'd*, 661 F.2d 939 (9th Cir.1981)..........................19

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
   MDL Dkt. No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. June 10, 1992).....................19

*Fisher Bros. v. Cambridge-Lee Indus., Inc.*,
   630 F. Supp. 482 (E.D. Pa. 1985) .........................................................19

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S.Ct. 2398 (2014)........................................................................16

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878
   (N.D. Cal. Apr. 29, 2011) ....................................................................11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

ii

1996046.1

*In re Howrey LLP*,
  Case No. 14–cv–03062, 2014 WL 3427304 (N.D. Cal. July 14, 2014) ...................................9

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................................17

*Johansson- Dohrmann v. CBR Sys.*,
  No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS 103863
  (S.D. Cal. July 24, 2013) ...................................................................................................15

*Kirkorian v. Borelli*,
  695 F. Supp. 446 (N.D. Cal. 1988) .....................................................................................19

*Loos v. Immersion Corp.*,
  762 F.3d 880 (9th Cir. 2014) ..............................................................................................13

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  No. 03–CV–4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ...............................................18

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)...................................................................................20

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007)................................................................................................14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...................................................................................10, 15, 18

*Miller v. Ventro Corp.*,
  No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ........................................23

*Milstein v. Huck*,
  600 F. Supp. 254 (E.D.N.Y. 1984) .......................................................................................16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................................19

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
  730 F.3d 1111 (9th Cir. 2013) ............................................................................................14

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014) ............................................................................................12

*Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) .................................................................................9, 10, 16

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................................................... *passim*

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

iii

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ........................................................................14

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
   No. 12–16624, 2014 WL 7139634 (9th Cir. Dec. 16, 2014) ...................................12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ......................................................................12

*In re Rambus Inc. Derivative Litig.*,
   No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845
   (N.D. Cal. Jan. 20, 2009) ...........................................................................21

*Redwen v. Sino Clean Energy, Inc.*,
   CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275
   (C.D. Cal. July 9, 2013) .............................................................................24

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ........................................................................19

*Reynolds v. Beneficial Nat'I Bank*,
   288 F.3d 277 (7th Cir. 2002) ........................................................................15

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ........................................................................13

*In re RJR Nabisco Sec. Litig.*,
   MDL No. 818, 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) .................................21

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................................11, 17, 20

*Satchell v. Fed. Express Corp.*,
   No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066
   (N.D. Cal. Apr. 13, Cal. 2007) ......................................................................11

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
   No. 09-cv-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012) ............................17

*Sutterfield v. Micromuse, Inc.*,
   No. C 04–0893 SBA, 2004 WL 6058065 (N.D. Cal. July 13, 2004) ......................23

*Trief v. Dun & Bradstreet Corp.*,
   840 F. Supp. 277 (S.D.N.Y. 1993) .................................................................10

*Van Ba Ma v. Coviden Holding, Inc.*,
   No. SACV 12–2161, 2014 WL 2472316 (C.D. Cal. May 30, 2014) .......................21

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

iv

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ................................................................9

*Vanwagoner v. Siemens Indus., Inc.*,
    No. 2:13–cv–01303, 2014 WL 7273642 (E.D. Cal. Dec. 17, 2014)..........................9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)....................................................................19

*Wixon v. Wyndham Resort Dev. Corp.*,
    No. C 07–02361, 2010 WL 3630124 (N.D. Cal. Sept. 14, 2010)..........................10

*Woo v. Home Loan Grp. L.P.*,
    No. 07-CV-202 H(POR), 2008 WL 3925854 (S.D. Cal. Aug. 25, 2008)..................10

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    No. CIV.02–2677, 2005 WL 840370 (D. Minn. Apr. 8, 2005) ............................20

OTHER AUTHORITIES

1995 U.S.C.C.A.N. 730 ..............................................................................23

Fed. R. Civ. P. 23 ...............................................................................1, 9

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

v

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT on June 11, 2015 at 1:30 p.m., or as soon thereafter as counsel may be heard, at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Edward M. Chen, United States District Judge, Lead Plaintiff Boilermaker Blacksmith National Pension Trust will respectfully move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the [Proposed] Order and Final Judgment (Dkt. No. 111-3) approving the proposed Settlement, Plan of Allocation, and awarding attorneys' fees and expenses.[1]   This motion is based on the accompanying Memorandum of Points and Authorities in Support of Motion for (1) Final Approval of Class Action Settlement; and (2) Approval of the Plan of Allocation of Settlement Proceeds as well as the attached Declaration of Daniel S. Sommers in support thereof with attached exhibits.[2]

## ISSUES TO BE DECIDED

(i)     Whether the proposed Settlement should be granted final approval.

(ii)    Whether the proposed Plan of Allocation proceeds to the Class should be given final approval.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Boilermaker Blacksmith National Pension Trust ("Lead Plaintiff" or "Boilermaker-Blacksmith") respectfully submits this

---

[1] All of the capitalized terms used herein have the same meanings as set forth in the Stipulation of Settlement dated as of November 25, 2014 (Dkt. No. 111-1) (the "Stipulation"), and filed with the Court.

[2] Filed simultaneously herewith is Lead Counsel's Notice of Motion and Motion for an Award of Attorneys' Fees and Expenses and Memorandum of Points and Authorities in Support Thereof.

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

1

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

memorandum in support of its motion for final approval of the Settlement of this litigation for $8,000,000.00 in cash (plus accruing interest) (the "Settlement") and approval of the proposed Plan of Allocation. The terms of the Settlement are set forth in the Stipulation.  Dkt. No. 111-1. Lead Plaintiff and Lead Counsel believe that the Settlement is a highly favorable result for the Class and should be approved. The $8 million settlement amount was deposited into an escrow account on within ten days of this Court's Order for Notice and Hearing (Dkt. No. 119) preliminarily approving the Settlement.  *See* accompanying Declaration of Daniel S. Sommers in Support of Lead Plaintiffs' Notice of Motion and Motions for (1) Final Approval of Class Action Settlement; (2) Approval of the Plan of Allocation of Settlement Proceeds; and (3) Award of Attorneys' Fees and Expenses ("Sommers Decl." or "Sommers Declaration") at ¶ 65.

This case is a complex class action alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934.  The case has been zealously and efficiently prosecuted by Lead Counsel against determined opposition from its commencement in 2013.  From the outset, Defendants vigorously asserted defenses, adamantly denied liability and were firm in their belief that Lead Plaintiff could not prevail on the claims asserted. As set forth in more detail in the Sommers Declaration, the Settlement was achieved only after Lead Counsel, *inter alia*: (a) conducted a thorough pre-filing investigation; (b) conducted or supervised detailed investigation that included researching and identifying over 100 potential fact witnesses, interviewing approximately fifty-six individuals, most of whom were former employees of or contractors for Defendant Impax Laboratories, Inc. ("Impax" or the "Company"), as well as other percipient fact witnesses; (c) successfully overcame, in substantial part, Defendants' motion to dismiss Lead Plaintiff's claims; (d) propounded extensive discovery upon Defendants and non-parties concerning the allegations upheld by the Court; (e) conducted the review and analysis of nearly

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

2

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

300,000 pages of documents produced by Defendants and multiple third parties; (f) retained and consulted with an expert regarding materiality, loss causation, market efficiency and damages as well as an expert on the rules, regulations and practices of the United States Food and Drug Administration ("FDA"); (g) extensively prepared for mediation with the mediator Honorable Layn Phillips, a retired United States District Court Judge, and prepared extensive written submissions for the mediation supported by nearly 80 exhibits; and (h) attended an all-day, in person mediation with Judge Phillips. *Id.* at ¶¶ 17-22, 34-50.

Lead Plaintiff and its counsel believe that the $8 million Settlement represents a highly favorable result for the Class and fully takes into consideration the procedural posture of the case and risks of continued litigation. As further detailed below, the extensive pre-filing investigation, the substantial motion practice, the formal discovery conducted by Lead Plaintiff, and the thorough mediation process informed Lead Plaintiff as to both the strengths of the case and risks to recovery, which were carefully evaluated in determining which course of action was in the best interest of the Class. *Id.* at ¶¶ 73-95. If not for this Settlement, the case would have continued to be fiercely contested by the parties with the ultimate outcome uncertain. Defendants demonstrated a commitment to defend this case aggressively and are represented by well-respected and highly capable counsel from Latham & Watkins LLP.  Accordingly, Lead Plaintiff respectfully moves for final approval of the proposed Settlement.

Lead Plaintiff and Lead Counsel further submit that the proposed Plan of Allocation is fair and reasonable and should be approved.  The Plan of Allocation was developed with Lead Plaintiff's damages expert and takes into account relevant aspects of the federal securities laws.

As a result, the Plan of Allocation provides a fair and reasonable basis for allocating the Net Settlement Fund among Class Members, and therefore should be approved.[3]

## II.    BACKGROUND

### A.    History of the Action

#### 1.    Appointment as Lead Plaintiff

On March 7, 2013, a complaint was filed in the Northern District of California on behalf of a putative class of purchasers of Impax common stock, captioned *Mulligan v. Impax Laboratories, Inc. et al.*, No. 13-cv-01037.   Sommers Decl. at ¶ 7.   On April 8, 2013, a similar complaint captioned *Haverhill Retirement System v. Impax Laboratories, Inc. et al.*, No. 13-cv-01566 was filed in the Northern District of California.   *Id.*

On May 6, 2013, Boilermaker-Blacksmith filed a motion to appoint lead plaintiff and lead counsel.  *Id.* at ¶ 8.  Two other movants filed motions for appointment as lead plaintiff.  *Id.* On May 20, 2013, Boilermaker-Blacksmith filed a response in support of its motion for appointment as lead plaintiff.    *Id.* at ¶ 9.   Also on May 20, 2013, a competing movant Government of Bermuda Contributory and Public Service Superannuation Pension Plans ("Bermuda") also filed a response in support of its appointment as lead plaintiff, and on May 28, 2013, Boilermaker-Blacksmith and Bermuda each filed a reply.  *Id.* at ¶ 10.

On June 17, 2013, this Court issued an order requesting that movants for lead plaintiff submit additional briefing by June 18, 2013 to provide information on their financial interest as calculated using the *Eichenholtz v. Verifone Holdings, Inc.*, C07-06140MHP, 2008 WL 3925289

---

[3] On January 8, 2015, the Court issued an order requesting the Parties to respond to eleven questions concerning the Unopposed Motion for Preliminary Approval of the Proposed Settlement filed on November 26, 2014.  Dkt. No. 111.  The Parties filed a Joint Response on January 13, 2015.  Dkt. No. 117.  The Joint Response contains a detailed explanation of certain matters also pertinent to the Court's consideration of this Motion and, accordingly, Lead Plaintiff respectfully refers to and incorporates the Joint Response herein.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

4

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

(N.D. Cal. Aug. 22, 2008), retained shares method.  *Id.* at ¶ 13.  On June 18, 2013, both Boilermaker-Blacksmith (Dkt. No. 47) and Bermuda (Dkt. No. 46) submitted supplemental briefing to this Court that applied the loss calculation method in *Echenholtz* to their purchases and sales of Impax shares.  *Id.* at ¶ 14.  On June 21, 2013, this Court held a hearing on the motions to appoint lead plaintiff.  *Id.* at ¶ 15.

On July 2, 2013, the Court issued an order appointing Boilermaker-Blacksmith as Lead Plaintiff and appointing Cohen Milstein Sellers & Toll PLLC as Lead Counsel.  Dkt. No. 53.

### 2.      Investigation and Filing of the Complaint

On September 13, 2013, Lead Plaintiff filed its Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the United States Securities and Exchange Commission ("SEC").  Dkt. No. 63.  The Complaint alleged that Defendants either knowingly or recklessly made false and/or misleading statements to the public concerning Impax's ability to correct deficiencies cited by the FDA.

Lead Counsel engaged in significant pre-filing investigative efforts, despite the mandatory discovery stay under the Private Securities Litigation Reform Act ("PSLRA"), to develop the claims set forth in the Complaint and to evaluate the possible defenses thereto.  The investigation included, *inter alia*, the following:

(a)      reviewing and analyzing numerous documents filed by Impax with the SEC before, during, and after the Class Period, including, but not limited to, submissions on Forms 8-K, 10-Q, and 10-K;

(b)      conducting an in-depth investigation of FDA procedures related to FDA investigations of drug manufacturers, including the regulatory significance of various FDA administrative notices, the details of FDA regulatory guidelines, and

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

5

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

the detailed procedural standards required of drug manufacturers to comply with FDA guidelines;

(c)    consulting with an expert in FDA rules, regulations and practices;

(d)    preparing to interview, attempting to contact, and actually interviewing fifty-six individuals from a list of witnesses that Lead Counsel researched and compiled through its own investigation and that included approximately 120 individuals and former employees from the Company who have personal knowledge regarding the claims alleged in the Complaint;

(e)    filing a Freedom of Information Act Request related to the FDA investigations of Impax and negotiating with the FDA about the scope and production of documents under the FOIA request, and reviewing the responsive documents produced by the FDA;

(f)    reviewing and analyzing public documents made or distributed by Impax, including, but not limited to, conference calls, announcements, and wire and press releases; and

(g)    reviewing and analyzing other information obtainable on the Internet.

Sommers Decl. at ¶¶ 18-19.

Lead Counsel researched and organized the results of the above information into a 100-page Complaint, based in part on the descriptions of thirteen confidential witnesses culled from fifty-six witness interviews, and that described the significance and implications of the complex FDA investigation and review process, the significance of the administrative notices Impax had received, as well as alleged deficiencies in the Impax's daily manufacturing. *Id.* at ¶¶ 20-22.  All of these efforts were undertaken without the benefit of subpoena power due to the automatic stay provision of the PSLRA.  Accordingly, Lead Counsel was forced to rely upon its own creativity and diligence in order to build the case, even though much of the relevant information was in the hands of Defendants and, therefore, inaccessible to Lead Plaintiff prior to filing the Complaint. *Id.* at ¶ 17.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

6

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

On November 14, 2013, Defendants filed a motion to dismiss Lead Plaintiff's claims. Dkt. No. 66.  On December 30, 2013, Lead Plaintiff filed its opposition to Defendants' motion to dismiss.  Dkt. No. 70.  Defendants filed their reply in support of their motion to dismiss on January 31, 2014.  Dkt. No. 74.  This Court heard extensive oral argument on the motion to dismiss on March 13, 2014. Dkt. No. 82.  On April 18, 2014, the Court issued an order denying, in large part, Defendants' motion to dismiss.  Dkt. No. 91.

### 3.    Discovery

Lead Plaintiff promptly acted to propound discovery after receipt of the April 18, 2014 Order.  Lead Plaintiff served document requests on Defendants and served subpoenas on various non-parties.  Sommers Decl. at ¶¶ 34-46.  On June 2, 2014, the Court entered an Order requiring that mediation be completed within 120 days, and that "written discovery shall be limited to narrowly tailored discovery necessary to facilitate mediation."  Dkt. No. 99.  Lead Counsel and counsel for Defendants engaged in numerous meet and confer sessions and correspondence to negotiate not only Lead Plaintiff's requests for production served on Defendants, but also various non-party productions in response to Lead Plaintiff's non-party subpoenas.  *Id*. at ¶¶ 34-46.  As a result of extensive negotiations that took place over several months, Defendants produced to Lead Plaintiff over 284,000 pages of documents and non-parties produced to Lead Plaintiff over 11,000 pages of documents.  *Id*. at ¶ 47.  To conduct a thorough analysis of the documents produced, Lead Counsel organized two teams of attorneys to conduct a two-layer review of the documents.  *Id*. at ¶ 48.  This was a significant undertaking to complete in only a two- to three-month period.  *Id*. at ¶¶ 34-46.  Moreover, Lead Counsel used a sophisticated electronic system to perform the necessary review and analysis.  *Id*. at ¶¶ 48-50.  As part of the review, detailed

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

7

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

memoranda were created to summarize the contents of batches of production and highlight important documents relevant to Lead Plaintiff's core claims. *Id*.

### 4. Mediation and Settlement

On September 6, 2014, the parties exchanged opening mediation briefs, which included 136 total exhibits. *Id.* at ¶ 56. Defendants' mediation brief advanced numerous substantive arguments why Lead Plaintiff's case would lose at trial. *Id.* Likewise, Lead Plaintiff's brief advanced various arguments why Lead Plaintiff was likely to prevail at trial. *Id.* at ¶ 57. The parties then exchanged reply mediation briefs on September 12, 2014, and exchanged a combined total of fifteen additional exhibits and documents in support of their respective arguments. *Id.* at ¶ 58.

On September 22, 2014, the parties and representatives of Impax's insurance carriers participated in a full-day formal mediation conducted by the Hon. Layn R. Phillips (ret.). During the mediation, the parties had a full opportunity to meet with the mediator and there was a full and frank discussions of the strengths, weaknesses and practical considerations that would impact any settlement. *Id.* at ¶ 59. After a full day of discussions, an agreement was reached and the Parties immediately documented that agreement in a written term sheet. *Id.* Lead Plaintiff notified this Court of the settlement in principle on September 24, 2014. Dkt. No. 106.

The parties then spent several weeks negotiating the details of a formal settlement agreement and drafted the relevant settlement papers, executing the Stipulation on November 25, 2014. Sommers Decl. at ¶ 60. On November 26, 2014, Lead Plaintiff filed its Motion for Preliminary Approval of the Proposed Settlement (Dkt. No. 111), and filed supplemental information (Dkt. No. 118) in response to the Court's January 8, 2015 Order (Dkt. No. 117).

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

8

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

On January 16, 2015, the Court conducted a hearing, and that same day granted preliminary approval, ordered that notice be mailed to the Class, and set a hearing for final approval on June 11, 2015.  Dkt. No. 119; Sommers Decl. at ¶ 64.

## III.    THE STANDARDS GOVERNING JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

It is well established that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Vanwagoner v. Siemens Indus., Inc.*, No. 2:13–cv–01303, 2014 WL 7273642, at *9 (E.D. Cal. Dec. 17, 2014) (same). Courts must "be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1040-41 (N.D. Cal. 2008).  Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also In re Howrey LLP*, Case No. 14–cv–03062, 2014 WL 3427304, at *5 (N.D. Cal. July 14, 2014) (same).

In deciding whether to approve a proposed settlement of a class action under Federal Rule of Civil Procedure 23(e), the court must find that the proposed settlement is "fair, reasonable, and adequate." The Ninth Circuit has explained that:

> [Whether a class action settlement should be approved] will necessarily involve a balancing of several factors which may include, among others, some or all of the following: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

9

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

1
2

presence of a governmental participant; and the reaction of
the class members to the proposed settlement.

3  *Officers for Justice*, 688 F.2d at 625 (citations omitted); *In re Omnivision Techs., Inc.*, 559 F.

4  Supp. 2d at 1040-41 (same); *In re Charles Schwab Corp. Sec. Litig.*, No. C 08–01510, 2011 WL

5  1481424, at *4 (N.D. Cal. Apr. 19, 2011) (same). "'The relative degree of importance to be

6  attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the

7  type(s) of relief sought, and the unique facts and circumstances presented by each individual

8  case.'" *Woo v. Home Loan Grp. L.P.*, No. 07-CV-202 H(POR), 2008 WL 3925854, at *3 (S.D.

9  Cal. Aug. 25, 2008) (quoting *Officers for Justice*, 688 F.2d at 625).

10

11          Approval or rejection of a settlement is committed to the sound discretion of the court.  *In*

12  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).    However, the Ninth Circuit

13  has cautioned that a court's "'intrusion upon what is otherwise a private consensual agreement

14  negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a

15  reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion

16  between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

17  adequate to all concerned.'"  *Wixon v. Wyndham Resort Dev. Corp.*, No. C 07–02361, 2010 WL

18  3630124, at *2 (N.D. Cal. Sept. 14, 2010) (citing *Officers for Justice*, 688 F.2d at 625).  In

19  determining whether the proposed Settlement is fair, reasonable and adequate, the Court should

20  balance against the continuing risks of litigation the benefits afforded to the Class and the

21  immediacy and certainty of a substantial recovery.   *Mego*, 213 F.3d at 458.   Moreover,

22  "[s]ecurities class action litigation is notably difficult and notoriously uncertain.'" *Trief v. Dun &*

23  *Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993); *see also* Newberg on Class Actions §

24  13:52 (2014) (5th ed.) (same).

25

26

27

28

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

10

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

1    IV.    **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE**

2          A.    **The Settlement Enjoys a Presumption of Reasonableness Because It Is the Product of Arm's Length Settlement Negotiations**

3

4          The process by which the Settlement was reached is evidence of its fairness.   The

5    Settlement was extensively negotiated between the parties with the substantial assistance of a

6    private mediator with decades of experience mediating complex litigation, after substantial

7    formal and informal discovery. The Ninth Circuit "put[s] a good deal of stock in the product of

8    an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.

9    *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Courts have recognized that

10   "[t]he assistance of an experienced mediator in the settlement process confirms that the

11   settlement is non-collusive." *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist.

12   LEXIS 99066, at *17 (N.D. Cal. Apr. 13, Cal. 2007); *see also Harris v. Vector Mktg. Corp.*, No.

13   C-08-5198 EMC, 2011 U.S. Dist. LEXIS 48878, at *25-*26 (N.D. Cal. Apr. 29, 2011).

14

15         Here, the Settlement is entitled to a presumption of fairness because it is the product of

16   extensive arm's-length negotiations, including a full-day, in-person formal mediation, and was

17   conducted with the assistance of Honorable Layn Phillips (ret.) and by experienced and capable

18   counsel with a firm understanding of the strengths and weaknesses of their respective clients'

19   positions.   Sommers Decl. at ¶¶ 31, 59.   Moreover, the mediation only took place after Lead

20   Plaintiff was informed by an extensive informal investigation prior to filing the detailed

21   Complaint and after receipt and review of nearly 300,000 pages of documents produced by

22   Defendants and non-parties.  *Id.* at ¶¶ 47-50.

23

24         The negotiations leading to the Settlement were at all times hard-fought.   During these

25   negotiations, Lead Counsel zealously advanced Lead Plaintiff's positions and were fully

26

27

28

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

11

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

prepared to continue to litigate both in the district court and on appeal rather than accept a settlement that was not in the best interest of the Class.

**B.      The Settlement is Substantively Fair and Satisfies Ninth Circuit Settlement Approval Standards**

**1.      The Strength of Lead Plaintiff's Case**

Despite Lead Plaintiff's confidence in the likelihood of success at trial, continued litigation was not without risk to the Class. Although the Court denied, in large part, Defendants' Motion to Dismiss and held that Complaint adequately alleged falsity and scienter, and that the challenged statements were not protected by the Safe Harbor provisions of the PSLRA, the Court's ruling denying Defendants' motion to dismiss was explicit that it was based on the pleadings only.   Dkt. No. 91.   As such, Lead Plaintiff recognized that these issues were susceptible to being re-raised on a motion for summary judgment, and thus on a full record where the outcome could have been different.   Lead Plaintiff also considered the real risk that a jury may simply conclude that the Defendants' statements were too "soft" or immaterial and that investors (including sophisticated investors such as Lead Plaintiff) were not justified in relying upon them.   Sommers Decl. at ¶ 76.   Likewise, a jury could have concluded that the risk disclosures were more than adequate and that no reasonable investor could have been misled because all investors were told that there was no assurance that Impax would be able to satisfy the FDA's requirements.   *Id.*   Lead Counsel was also mindful of the certainty that if Lead Plaintiff prevailed at trial, Defendants would appeal the Court's ruling on these legal issues.   *Id.* A substantial body of recent Ninth Circuit decisions have affirmed on appeal the dismissal of securities class actions, which is always a risk in securities cases. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014), *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, No. 12–16624, 2014 WL 7139634 (9th Cir. Dec. 16, 2014); *In re NVIDIA*

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

12

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

*Corp. Sec. Litig.*, 768 F.3d 1046 (9th Cir. 2014); *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869 (9th Cir. 2012).

Moreover, substantial evidence compiled during discovery provided the very real possibility that a jury could conclude that Defendants did implement the corrective actions they described to investors, and that, as such, the Individual Defendants believed in the success of the remediation plan.  Sommers Decl. at ¶ 77.  Were this to happen, Lead Plaintiff could lose at trial for failure to demonstrate scienter or falsity.  As described more fully in the Sommers Declaration (¶¶ 80-83), one of Defendants' principal defenses was of particular note: that there is strong evidence that Impax was working to remediate its deficiencies and was spending an enormous amount both in human resources and in dollars to fix these problems, and that Defendants had a sound factual basis to believe that Impax was making progress in this regard. There are documents that could be used to demonstrate that Impax promptly and aggressively addressed many of the deficiencies in the 2011 Form 483.  *Id.*

While Lead Plaintiff believes its narrative is more compelling, it is impossible and, indeed, would have been irresponsible to ignore the risk that a jury could disagree – especially because Lead Plaintiff is certain that Impax's current and former executives would uniformly testify in a manner consistent with Impax's narrative of the case that Defendants' conduct was inconsistent with a finding that they acted with scienter.  *Id.* at ¶¶ 84-91.  This defense in particular posed a material risk to Lead Plaintiff's case and was a substantial factor in its decision-making process that supports the wisdom of providing the Class with an $8 million recovery now rather than the risk of no recovery after trial, and possibly years of appellate litigation.  *Id.* at ¶¶ 84-91, 95.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

13

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

1    Lead Plaintiff also recognizes the risk of proving loss causation and damages at trial. *Id.*

2   at ¶¶ 92-95.  Throughout the Class Period, Impax informed its investors that the Company faced

3   the real risk that the FDA might not be satisfied with the Company's remediation efforts, and

4   that such an outcome would delay or prevent closure of the Warning Letter.  Lead Plaintiff

5   would have to prove at trial "a causal connection between the material misrepresentation and the

6   loss." *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 342 (2005); *In re Oracle Corp. Sec. Litig.,*

7   627 F.3d 376, 394 (9th Cir. 2010).  Typically, "to satisfy the loss causation requirement, the

8   plaintiff must show that the revelation of that misrepresentation or omission was a substantial

9   factor in causing a decline in the security's price, thus creating an actual economic loss for the

10  plaintiff."  *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.,* 730 F.3d

11  1111, 1119 (9th Cir. 2013) (quoting *McCabe v. Ernst & Young, LLP,* 494 F.3d 418, 425–26 (3d

12  Cir. 2007)).

13      Defendants claimed that since these risks were disclosed in real time as Defendants

14  learned new information from the FDA, to prove loss causation, Lead Plaintiff will have to prove

15  that its losses stemmed not simply from the FDA's decision to keep the Warning Letter active (a

16  risk that Impax disclosed), but from a decision not to close out the Warning Letter due to facts

17  that Defendants are alleged to have concealed.  Sommers Decl. at ¶¶92-93.

18      Although Lead Plaintiff believes that Defendants concealed risks that did cause Lead

19  Plaintiff's damages when Defendants disclosed it received a new Form 483 in March 2013, in

20  reaching the Settlement Lead Plaintiff recognized the risk that the Court or a jury could disagree.

21  *Id.* at ¶ 94.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

14

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation Supports Approval of the Settlement

In assessing whether the proposed Settlement is fair, reasonable, and adequate, "the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the plaintiff's case), the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." *Johansson- Dohrmann v. CBR Sys.*, No. 12-cv-1115-MMA (BGS), 2013 U.S. Dist. LEXIS 103863, at *11-*12 (S.D. Cal. July 24, 2013) (citing *Mego*, 213 F.3d at 458).

If this litigation were to continue, there was a risk that this matter would likely not be finally resolved for years given the amount of additional time needed to reach trial.   And even if Lead Plaintiff were to prevail at trial and be able to collect a judgment, any damages awarded might be much smaller than those that Lead Plaintiff seeks.  And in any event, Defendants would undoubtedly appeal any adverse decision to the Ninth Circuit and, if they lost there, could have sought *en banc* review or a writ of certiorari from the United States Supreme Court or both.[4] Such appeals would be time consuming and might lead to the reversal of any favorable verdict. If this litigation were to continue there is a real possibility that Class members might collect little or nothing and, even if eventually able to recover a meaningful amount, Class members would not receive any payment until well into the future. By contrast, the proposed Settlement would provide a prompt, substantial and assured all-cash benefit to class members in the near future.  A prompt, certain recovery is considerably more valuable to the Class than an uncertain recovery at

---

[4] For example, in *In re Apple Computer Sec. Litig.*, No. 84-CV-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), a case litigated and tried in this Circuit, the jury rendered a verdict for plaintiffs after years of litigation and an extended trial.  Based upon the jury's findings, recoverable damages would have exceeded $100 million.  However, the district court overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

some undetermined point in the future. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002) ("To most people, a dollar today is worth a great deal more than a dollar ten years from now.").

The immediacy and certainty of this Settlement is a factor for the Court to balance in determining whether this proposed settlement is fair, adequate, and reasonable. Courts consistently have held that "[t]he expense and possible duration of the litigation [should] be considered in evaluating the reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *see also Officers for Justice*, 688 F.2d at 626. Here, this factor is significant as Lead Counsel understood that Defendants' insurance policies that provided coverage for Lead Plaintiff's claims was also being dissipated by the cost of defending the case. Sommers Decl. at ¶ 95.

Moreover, the securities claims advanced by Lead Plaintiff involve complex legal and factual issues. Indeed, the significance of FDA notices such as Form 483s have a complicated contextual significance and proving to a jury that statements about Impax's remediation progress were false and misleading would involve highly complex testimony by competing experts. In addition, continued litigation was likely to have a long duration as additional document discovery, numerous depositions, and extensive expert discovery and testimony would be necessary, at great expense to the ultimate recovery available for Class Members.

Accordingly, the factors of risk, expense, complexity, and likely duration of further litigation weigh in favor of approving the Settlement.

### 3. The Risk of Maintaining Class Action Status Throughout Trial Supports Approval of the Settlement

Lead Plaintiff is confident that it would prevail on a motion for class certification. However, Lead Plaintiff acknowledges that an order certifying a class may always be revisited.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

16

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

Moreover, Lead Plaintiff recognizes developments in the law that may be used by Defendants to oppose class certification. *See, e.g. Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2414-15 (2014) (defendants may introduce lack of price impact at the class certification stage to defeat the "fraud on the market" presumption).  Accordingly, Lead Plaintiff recognizes that there is some risk with respect to this factor.

### 4.     The Amount Offered Supports Approval of the Settlement

The Settlement constitutes a meaningful percentage of the maximum possible recovery for the Class, especially when taking into account the risks and delay that would be faced in an attempt to obtain a greater amount.  As discussed more fully in the Sommers Declaration, Lead Counsel retained Nathan Associates Inc. ("Nathan") to conduct an event study analysis for the purpose of assessing potential damages in this action.  Sommers Decl. at ¶¶ 52-55.  Based on the damages per share attained from the event study analysis and the estimated number of damaged shares attained from the application of a multi-trader model, Nathan estimated class wide damages to be in the range of $54-74 million, depending on the trading volume discount applied to the unadjusted damage numbers.  *Id.* at ¶ 53.   Thus, the $8 million recovery obtained by Lead Plaintiff in this case represents approximately 10.8% to 14.8% of total estimated recovery.  *Id.* Settlements in this range have been repeatedly approved.  *Rodriguez*, 563 F.3d at 965 (approving a 10% recovery in an antitrust case); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1042 (plaintiffs' estimate of damages was $151.8 million and the $13.75 million settlement represented "just over 9% of the maximum potential recovery" which was "reasonable" and "higher than the median percentage of investor losses recovered in recent shareholder class

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

17

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

action settlements" even after subtracting attorneys' fees and costs).[5]    Accordingly, the

percentage of maximum provable damages recovered here falls squarely within the high end of

settlements approved by other courts and is a very good outcome when taking into account all of

the risks that would have been confronted by Lead Plaintiff and the Class.

### 5.    The Extent of Discovery Completed and Stage of Proceedings Supports Approval of the Settlement

The amount of discovery and stage or proceedings favor approval of a settlement where

they demonstrate Lead Counsel's familiarity with the case and Lead Plaintiff's having enough

information to make informed decisions.  *Omnivision*, 559 F. Supp. 2d at 1042.  Here, Lead

Counsel had conducted a substantial and thorough investigation into the Lead Plaintiff's claims

prior to filing the Complaint.  Sommers Decl. at ¶¶ 17-22.  Moreover, after this Court's ruling on

the motion to dismiss, Lead Plaintiff propounded discovery on Defendants and several non-

parties through requests for production and subpoenas resulting in the production of nearly

300,000 pages of documents.  *Id.* at ¶ 34-47.  Here, "'the parties h[ad] sufficient information to

make an informed decision about settlement'" which is a factor that weighs in favor of approval.

*Mego*, 213 F.3d at 459 (affirming approval of settlement because parties had adequate

information to evaluate settlement, and based on class counsel's significant investigation and

---

[5] *See also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (plaintiffs had obtained 13% recovery of maximum estimated damages in case which the court held was "within the range of reasonableness") (citing cases); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 09-cv-1293, 2012 WL 3589610, at *7 (D. Conn. Aug. 20, 2012) (affirming the parties' finding that a settlement obtaining 3.5% of the "most aggressive estimate of maximum provable damages … exceeds the average recovery in shareholder litigation" and citing cases to support the reasonableness of 3% to 7% recoveries); *In re Baan Co. Sec. Litig.*, 284 F. Supp. 2d 62, 65 (D.D.C. 2003) ("Courts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; but an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness.") (citation and quotations omitted); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03–CV–4372, 2009 WL 4730185, at *7 (D.N.J. Dec. 4, 2009) (approving settlement at "slightly below 10% of the total realizable value of the action" which was "well over the average settlement amounts in securities fraud class actions").

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

18

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

work with damages and accounting experts, despite that "extensive formal discovery had not

been completed").  This factor therefore strongly supports the fairness of the Settlement.

### 6. The Experience and Views of Counsel Supports Approval of the Settlement

In determining whether the Settlement should be approved, the Court should consider

Lead Counsel's view that the Settlement is fair, reasonable and adequate. Courts recognize that,

in determining whether a proposed settlement is fair, "[g]reat weight" should be accorded to the

views of experienced class counsel "who are most closely acquainted with the facts of the

underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528

(C.D. Cal. 2004) (citation omitted); *see also In re First Capital Holdings Corp. Fin. Prods. Sec.*

*Litig.*, MDL Dkt. No. 901, 1992 U.S. Dist. LEXIS 14337, *8 (C.D. Cal. June 10, 1992) (finding

belief of counsel that the proposed settlement represented the most beneficial result for the class

to be a compelling factor in approving settlement).[6]  Indeed, "the fact that experienced counsel

involved in the case approved the settlement after hard-fought negotiations is entitled to

considerable weight." *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D.Cal.1980) *aff'd*,

661 F.2d 939 (9th Cir.1981).

Here, Lead Counsel is Cohen Milstein Sellers & Toll PLLC, an experienced securities

class action litigation firm.  *See* Sommers Decl. at Ex. D (Resume of Cohen Milstein).  Lead

Counsel and their lawyers working on this case have successfully handled many large, complex

securities class actions.  Their judgment that the Settlement is fair, reasonable and adequate is

based both on their overall experience and the specific knowledge they gained about this case.

---

[6] Other courts have expressed similar views. *See, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

19

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

All of this provided Lead Counsel with a solid basis for an intelligent evaluation of the strengths and weaknesses of the Actions and the propriety of settlement.  As discussed in the Sommers Declaration, Lead Counsel conducted an extensive investigation and significant discovery prior to reaching the Settlement.  Sommers Decl. at ¶¶ 17-50.

As the Ninth Circuit observed in *Rodriquez*, "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  563 F.3d at 965; *see also Omnivision*, 559 F. Supp. 2d at 1043 ("'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"). Lead Counsel, having carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against Defendants, the likelihood of prevailing on these claims, the risk, expense, and duration of continued litigation, and the likelihood of subsequent appellate proceedings even if Lead Plaintiff prevailed against Defendants at trial, concluded that the Settlement here is an excellent result for the Class.

### 7.     The Presence and Views of a Governmental Participant Supports Approval of the Settlement

The involvement, or absence, of a government participant is a factor that also supports the Settlement, here.  Lead Plaintiff's case was not assisted in any way by the SEC or any other governmental inquiry or prosecution.  To Lead Counsel's knowledge, no SEC proceeding or investigation was instituted relating to the allegation in this case.  Sommers Decl. at ¶ 17.  As such, the claims for securities fraud had to be developed solely by Lead Plaintiff – and largely without subpoena power.  *Id.*  Accordingly, this was not a case where Lead Plaintiff could ride the coattails of a governmental agency's investigation and findings.  *See, e.g., In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, No. CIV.02–2677, 2005 WL 840370, at *7 (D. Minn. Apr. 8, 2005) (approving settlement and noting that "obtain[ing] a just result without the

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

20

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

assistance of a governmental investigation of securities fraud" "further justifies" approval); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 360 (S.D.N.Y. 2002) (noting with approval that settlement "negotiations were made without the benefit of any governmental or agency investigation or prosecution"); *In re RJR Nabisco Sec. Litig.*, MDL No. 818, 1992 WL 210138, at *8 (S.D.N.Y. Aug. 24, 1992) (approving settlement and noting that plaintiffs' counsel, not a governmental agency, exclusively developed the facts in aid of the plaintiffs' case.)

Moreover, counsel for Defendants has confirmed that, in accordance with the Stipulation, Defendants served upon the appropriate State official of each State and the Attorney General of the United States notice of the Action in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1711, et seq. (the "CAFA Notice") within ten days of the January 16, 2015 entry of the Court's preliminary approval order.   Sommers Decl. at ¶ 66.   The CAFA Notice provided federal and state officials an opportunity to intervene or otherwise take action in response to the Settlement.   *Id.*   Those federal and state officials have not raised any concerns with the Settlement.   "Therefore, this factor weighs slightly in favor of final approval."   *Van Ba Ma v. Coviden Holding, Inc.*, No. SACV 12–2161, 2014 WL 2472316, at *4 (C.D. Cal. May 30, 2014).

> **8.      The Reaction of Class Members to the Proposed Settlement Supports Approval of the Settlement**

The reaction of the class to the Settlement is a significant factor in assessing its fairness and adequacy. *See In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 U.S. Dist. LEXIS 131845, at *10 (N.D. Cal. Jan. 20, 2009). "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Omnivision*, 559 F. Supp. 2d at 1043.

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

21

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

To date, the Notice was sent to approximately 38,406 potential Class Members and was both published on *Investor's Business Daily* and transmitted over the *Business Wire* on February 20, 2015.  Sommers Decl. at Ex. C (Declaration of Justin Hughes on behalf of Kurtzman Carson Consultants LLC ("KCC Decl.") at ¶¶ 6-7).  Moreover, the claims administrator KCC caused to be established a dedicated website, www.ImpaxSecuritiesLitigation.com, to assist potential Class Members.  KCC Decl. at ¶ 9.  The website was operational beginning on February 13, 2015, and is accessible 24 hours a day, 7 days a week.  *Id.*  The website lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the Court's June 22, 2015 fairness hearing. *Id.*  Pursuant to the Order for Notice and Hearing and as set forth in the Notice, the deadlines for Class Members to submit a request for exclusion from the Class or object to any aspect of the Settlement, including the Plan of Allocation, is Thursday, May 21, 2015.  As of the date of this submission, there have been no objections, and one purported request for exclusion.  *Id.* at ¶ 67 & n.2.[7]  As such, although the time for objections has not yet expired, the Settlement enjoys overwhelming support

## C.     Lead Plaintiff, an Institutional Investor, Supports Approval of the Settlement

The unqualified endorsement of the Lead Plaintiff here provides further, strong support of the fairness, reasonableness and adequacy of the Settlement.  Boilermaker-Blacksmith National Pension Trust is precisely the type of institutional investor that the PSLRA intended to serve as lead plaintiff and fully supports approval of the Settlement as well as Lead Counsel's request for attorneys' fees and costs.  *See* Sommers Decl. at Ex. A (Declaration of Mario Rodriguez, Chief Investment Officer of Boilermaker-Blacksmith National Pension Trust, In

---

[7] A copy of the purported request for exclusion is attached to the Sommers Declaration at Exhibit A.  Among other things, it does not provide required information supporting membership in the Class because it fails to provide the number of shares purchased and sold, and the prices for each such transaction.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

22

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

Support of Lead Plaintiff's Notice of Motion for Final Approval of Class Action Settlement and Lead Counsel's Request for an Award of Attorneys' Fees and Expenses).  The PSLRA favors the involvement of institutional investors in as part of securities fraud litigation.  *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.) (the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake") (reprinted at 1995 U.S.C.C.A.N. 730, 733).  Accordingly, the PSLRA lead plaintiff appointment process was designed to "give preference to institutional investors which would be in a better position to manage the litigation and to limit the influence of lawyers."  *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *6 (N.D. Cal. Nov. 28, 2001); *see also Sutterfield v. Micromuse, Inc.*, No. C 04–0893 SBA, 2004 WL 6058065, at *10 (N.D. Cal. July 13, 2004) (the PSLRA favors institutional investors because "[i]nstitutional investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees").  As such, the participation of Lead Plaintiff, an institutional investor, and its support of the Settlement as well as the request for attorneys' fees weigh in favor of this Court's granting final approval to the Settlement.

## V.   THE COURT HAS THE AUTHORITY TO CERTIFY THE SETTLEMENT CLASS

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997), the Court noted that each of the certification requirements must be satisfied in a settlement context. "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (names parties' claims or defenses 'are typical . . . of the class'); and (4)

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

23

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Id.* at 613 (alteration in original).  "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Id.* at 614.   The numerosity, commonality, and typicality criteria, as well as maintaining the action under Rule 23(b)(3) for settlement purposes, are set forth in prior filings with the Court.  *See* Dk.t No. 111 (Lead Plaintiff's unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Points and Authorities in Support).   For the reasons described therein, this Court should grant certification for settlement purposes.   The Court previously approved certification of the Class for purposes of preliminary approval and nothing has changed to warrant a different result for purposes of final approval of the Settlement.

## VI.      THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Lead Plaintiff also seeks the Court's final approval of the Plan of Allocation of the Net Settlement Fund and approval of the methodology by which the Settlement proceeds will be allocated among Class members.   The Plan of Allocation is set forth in the Notice mailed to Class members, and additional information regarding the Plan of Allocation is located on the www.ImpaxSecuritiesLitigation.com website.  KCC Decl. at ¶ 9.

Assessment of a plan of allocation of settlement proceeds in a class action under Rule 23 of the Federal Rules of Civil Procedure is governed by the same standards of review applicable to the settlement as a whole – the plan must be fair, reasonable and adequate. *Redwen v. Sino Clean Energy, Inc.*, CV 11-3936 PA (SSx), 2013 U.S. Dist. LEXIS 100275, at *28 (C.D. Cal. July 9, 2013); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992). An allocation formula need only have a reasonable, rational basis, particularly if recommended by "'experienced and competent'" class counsel. *In re Broadcom Corp. Sec. Litig.*, No. SACV 01-

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

24

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

275 DT (MLGx), 2005 U.S. Dist. LEXIS 41976, at *6-*7 (C.D. Cal. Sept. 12, 2005). Further, claims that "could not be presented may be included in a settlement, as long as they arise out of the same factual predicate as the settled conduct." *Id*. at *7.

The objective of a Plan of Allocation here is to provide an equitable basis upon which to distribute the Net Settlement Fund among eligible class members. The Plan of Allocation was developed by Lead Counsel with the assistance of their damages expert, reflects an assessment of the damages that could have been recovered at trial under the theories asserted in the case by Lead Plaintiff, and is consistent with the relevant provisions of the PSLRA regarding calculation of and limitations on damages. *See* Sommers Decl. at ¶¶ 68-72 (describing proposed Plan of Allocation); *see also* Dkt. No. 117 (Lead Plaintiff's and Defendants' Joint Response to the Court's January 8, 2015 Order, Topics Nos. 5 and 6). The Plan of Allocation will result in a fair distribution of the available proceeds among those class members who submit valid claims and therefore should be approved.  Importantly, no Class Member has voiced any objection to the fairness or reasonableness of the Plan of Allocation.

## VII.    CONCLUSION

For all of the above reasons, Lead Plaintiff respectfully requests that the Court grant final approval to the Settlement and the Plan of Allocation.

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

25

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

1  DATED:  May 7, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERA LLP


By:   /s/ Solomon B. Cera
         Solomon B. Cera

Solomon B. Cera (State Bar No. 99467)
Louis A. Kessler (State Bar No. 243703)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Fax: (415) 777-5189
Email: scera@cerallp.com
Email: lakessler@cerallp.com

*Liaison Counsel for Lead Plaintiff Boilermaker
Blacksmith National Pension Trust*

**COHEN MILSTEIN SELLERS & TOLL
PLLC**

Steven J. Toll (admitted *pro hac vice*)
Daniel S. Sommers (admitted *pro hac vice*)
Genevieve Fontan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Christopher Lometti (admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Lead Counsel for Lead Plaintiff Boilermaker
Blacksmith National Pension Trust*

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

26

NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NUMBER: 13-cv-01037 EMC

1

**SIGNATURE ATTESTATION**

2      I am the ECF User whose identification and password are being used to file the foregoing

3  document.  Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Solomon B.

4  Cera, attest that concurrence in the filing of this document has been obtained.

5

6

7  DATED:  May 7, 2015                          ___/s/ Solomon B. Cera_____
                                              Solomon B. Cera

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

27