SOLOMON B. CERA (State Bar No. 99467)
LOUIS A. KESSLER (State Bar No. 243703)
CERA LLP
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Fax: (415) 777-5189
Email: scera@cerallp.com
Email: lakessler@cerallp.com

*Liaison Counsel for Lead Plaintiff the Boilermaker
Blacksmith National Pension Trust*

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| DENIS MULLIGAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>IMPAX LABORATORIES, INC., LARRY HSU, and ARTHUR A. KOCH<br><br>Defendants. | Case No.: 13-cv-01037-EMC<br><br>**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Class Action<br><br>DATE:   June 11, 2015<br>TIME:   1:30 P.M.<br>CTRM:  Courtroom 5, 17th Floor<br>        The Honorable Edward M. Chen |

(caption continued on next page)

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAVERHILL RETIREMENT SYSTEM,
Individually and on Behalf of All Others
Similarly Situated,

          Plaintiff,

          vs.

IMPAX LABORATORIES, INC., LARRY
HSU, and ARTHUR A. KOCH

          Defendants.

Case No.: 13-cv-01566-EMC

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................ 2

II.   THE REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS
      SHOULD BE GRANTED IN THIS ACTION .................................................... 4

      A.    Nature of the Action ................................................................................ 4

      B.    A Reasonable Percentage of the Fund Recovered Is the Appropriate
            Method for Awarding Attorneys' Fees in Common Fund Cases ........................... 5

      C.    A Percentage of 29% of the Fund Created Is Reasonable in This Case ................. 6

            1.    The Results Achieved and the Benefit Obtained for the Class .................. 7

            2.    The Risks to Continued Litigation ............................................................. 8

            3.    The Financial Burden of Contingent Fee Representation and
                  the Risk of Nonpayment ...................................................................... 11

            4.    A 29% Fee Award is Consistent with the Market Rate in
                  Similar Complex, Contingent Litigation ................................................... 13

            5.    The Skill Required and the Quality and Efficiency of the Work ............. 15

      D.    The Requested Fee Is Reasonable Under a Lodestar Cross-Check Analysis ....... 17

      E.    The Reaction of the Class Supports Approval of the Attorneys' Fees ................. 18

      F.    Lead Plaintiff, an Institutional Investor, Supports Lead Counsel's
            Request for Attorneys' Fees and Expenses .............................................. 20

III.  THE EXPENSES ARE REASONABLE AND WERE NECESSARILY
      INCURRED TO ACHIEVE THE BENEFIT OBTAINED ............................................. 21

IV.   CONCLUSION ................................................................................ 22

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

i

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3      **CASES**

4

5      *Abrams v. Lightolier Inc.*,
       50 F.3d 1204 (3d Cir. 1995)..................................................................................21

6      *In re Activision Sec. Litig.*,
7         723 F. Supp. 1373 (N.D.Cal.1989) .......................................................................6

8      *In re AMERCO Sec. Litig.*,
          No. 04-2182 (D. Ariz. Nov. 2, 2006)..........................................................14, 22
9
       *Anixter v. Home-Stake Prod. Co.*,
10        77 F.3d 1215 (10th Cir. 1996) .............................................................................13

11     *In re Apple Computer Sec. Litig.*,
12        No. 84-CV-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .....................9, 13

13     *Backman v. Polaroid Corp.*,
          910 F.2d 10 (1st Cir. 1990) .................................................................................13
14
       *In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
15        No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057
          (S.D. Fla. Apr. 25, 2011) ....................................................................................13
16
       *Bateman Eichler, Hill Richards, Inc. v. Berner*,
17        472 U.S. 299 (1985).............................................................................................6

18     *Bayat v. Bank of the West*,
19        No. C–13–2376 EMC, 2015 WL 1744342 (N.D. Cal. Apr. 15, 2015)................3, 18

20     *Berkey Photo, Inc. v. Eastman Kodak Co.*,
          603 F.2d 263 (2d Cir. 1979)................................................................................13
21
       *Boeing Co. v. Van Gemert*,
22        444 U.S. 472 (1980).............................................................................................5

23     *Boyd v. Bechtel Corp.*,
24        485 F. Supp. 610 (N.D. Cal. 1979) .....................................................................19

25     *Broderick v. Mazur (PHP Healthcare)*,
26        No. 98-cv-1658 (C.D. Cal. Apr. 27, 2004) ....................................................14, 22

27

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW
28                                              ii                     NOTICE OF MOTION AND MOTION FOR
                                                                      AN AWARD OF ATTORNEYS' FEES
                                                                      CASE NUMBER: 13-cv-01037 EMC

*Brotherton v. Cleveland,*
    141 F. Supp. 2d 894 (S.D. Ohio 2001) ...................................................................18

*Cent. R.R. & Banking Co. v. Pettus,*
    113 U.S. 116 (1885)..............................................................................................5

*In re Charles Schwab Corp. Sec. Litig.,*
    No. C 08–01510, 2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)........................6

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ..............................................................................9

*In re Constellation Energy Grp., Inc. Sec. LItig.,*
    No. 1:08-cv-02854 (D. Md. Nov. 4, 2013) ......................................................14

*Dolgow v. Anderson,*
    43 F.R.D. 472 (E.D.N.Y. 1968) .........................................................................5

*Eshe Fund v. Fifth Third Bancorp,*
    No. 08-cv-421 (S.D. Ohio Nov. 20, 2013)........................................................14

*In re Fine Paper Antitrust Litig.,*
    751 F.2d 562 (3d Cir. 1984)..............................................................................17

*In re Gilead Scis. Sec. Litig.,*
    No. C-03-4999 (N.D. Cal. Nov. 5, 2010) ...................................................14, 22

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ............................................................................7

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ................................................................................21

*Headlands Reserve, LLC v. Center For Natural Lands Mgmt,*
    523 F. Supp. 2d 1113 (C.D. Cal. 2007) ............................................................16

*Hensley v. Eckerhart,*
    461 U.S. 424, 436 (1983).....................................................................................7

*In re Heritage Bond Litig.,*
    No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005)....................14, 15

*In re Heritage Bond Litig.,*
    No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555
    (C.D. Cal. June 10, 2005) .................................................................................12

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000)........................................................................15

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

iii

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ........................................................................8

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............................................................6

*In re JDS Uniphase Corp. Sec. Litig.*,
   No. C-02-1486, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ....................8, 13

*Landmen Partners Inc. v. Blackstone Grp.*,
   No. 08-cv-03601 (S.D.N.Y. Dec. 18, 2013) ......................................................14

*Levine v. Atricure, Inc.*,
   No. 1:06-cv-14324 (S.D.N.Y. May 27, 2011) ...................................................14

*Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
   No. 03–CV–4372, 2009 WL 4730185 (D.N.J. Dec. 4, 2009) ...........................8

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .....................................................................14, 18

*Meyenburg v. Exxon Mobil Corp.*,
   No. 3:05-cv-15, 2006 WL 5062697 (S.D. Ill. June 5, 2006) ............................18

*In re Mfrs. Life Ins.*,
   No. 1109, 96-CV-230 BTM(AJB), 1998 WL 1993385
   (S.D. Cal. Dec. 21, 1998) ..................................................................................19

*Miller v. Ventro Corp.*,
   No. 01-CV-1287, 2001 WL 34497752 (N.D. Cal. Nov. 28, 2001) ....................20

*In re The Mills Corp. Sec. Litig.*,
   No. 06-cv-0007, 2009 WL 5091931 (E.D. Va. Dec. 23, 2009)..........................16

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993)....................................................................21

*Mitchell v. Bankfirst*,
   No. C-97-1421, 2003 WL 921408 (N.D. Cal. Feb. 28, 2003) .........................18

*N. Point Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*,
   No. 11-cv-00595 (M.D. Tenn. May 12, 2014)..................................................14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................19

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... passim

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

iv

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

*In re Oracle Corp. Sec. Litig.*,
   No. C 01-988 SI, 2009 U.S. Dist. LEXIS 50995
   (N.D. Cal. June 16, 2009) ................................................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ...........................................................................................17

*Pokorny v. Quixtar, Inc.*,
   NO. C 07–0201, 2013 WL 3790896 (N.D. Cal. July 18, 2013) .......................................18

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) .........................................................................................11

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)..............................................................................................17

*In re RJR Nabisco Sec. Litig.*,
   No. MDL 818, 1992 U.S. Dist. LEXIS 12702
   (S.D.N.Y. Aug. 24, 1992) .................................................................................................14

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................................13

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012) ..............................................................................................6

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ..........................................................................................6, 7

*Siracusano v. Matrixx Initiatives, Inc.*,
   No. 04-cv-0886 (D. Ariz. Nov. 13, 2012)........................................................................14

*In re Skilled Healthcare Grp., Inc. Sec. Litig.*,
   No. CV-09-5416, 2011 WL 280991 (C.D. Cal. Jan. 26, 2011) .......................................18

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir. 1990)..............................................................................................19

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.*,
   No. 09-cv-1293, 2012 WL 3589610 (D. Conn. Aug. 20, 2012)..........................................8

*Sutterfield v. Micromuse, Inc.*,
   No. C 04–0893 SBA, 2004 WL 6058065, at *10 (N.D. Cal. July 13, 2004) ........................20

*TBK Partners, Ltd. v. Warshow*,
   No. 77 Civ. 972, 1977 U.S. Dist. LEXIS 13597 (S.D.N.Y. Oct. 6, 1977) ..............................21

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

v

*In re Terayon Commc'n Sys. Inc. Sec. Litig.,*
  No. C-00-1967 (N.D. Cal. Oct. 3, 2007)..............................................................14

*Thomas & Thomas Rodmakers Inc., et. al. v. Newport Adhesives*
  *and Composites, Inc., et al.,*
  Case No. 99-cv-07796 (C.D. Cal. Oct. 17, 2005) ...............................................14

*Trustees v. Greenough,*
  105 U.S. 527 (1882)..................................................................................................5

*In re Versata, Inc. Sec. Litig.,*
  No. C 01–1439, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001)..........................6

*Vincent v. Hughes Air West, Inc.,*
  557 F.2d 759 (9th Cir. 1977) ...................................................................................5

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002) ...................................................................... *passim*

*In Re Warner Commc'ns Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y.1985)....................................................................16, 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
  19 F.3d 1291 (9th Cir. 1994) ........................................................................5, 6, 8, 12

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,*
  364 F. Supp. 2d 980 (D. Minn. 2005).....................................................................12

**OTHER AUTHORITIES**

1995 U.S.C.C.A.N. 730 ...............................................................................................20

Dr. Jordan Milev, et al., *Recent Trends in Securities Class Action Litigation: 2014*
  *Year-End Review* (NERA Economic Consulting Jan. 20, 2015)..............................8

Fed. R. of Civ. P. 23.......................................................................................................1

H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.).....................................................20

Herbert Newberg & Alba Conte, 2 NEWBERG ON CLASS ACTIONS
  §11.48 (3d ed. 1992) ..............................................................................................18

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

vi

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE THAT on June 11, 2015 at 1:30 p.m., or as soon thereafter as counsel may be heard, at the Phillip Burton Federal Building and United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Edward M. Chen, United States District Judge, Lead Counsel, Cohen Milstein Sellers & Toll PLLC will respectfully move, pursuant to Federal Rule of Civil Procedure 23(e), for entry of the [Proposed] Order and Final Judgment (Dkt. No. 111-3) approving the proposed Settlement, Plan of Allocation, and awarding attorneys' fees and expenses.[1]   This motion is based on the accompanying Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Expenses as well as the attached Declaration of Daniel S. Sommers in support thereof with attached exhibits.[2]

## ISSUES TO BE DECIDED

(i)     Whether Lead Counsel and Liaison Counsel's request for an award of attorneys' fees should be granted.

(ii)     Whether Lead Counsel and Liaison Counsel's request for reimbursement of litigation expenses should be granted.

---

[1] All of the capitalized terms used herein have the same meanings as set forth in the Stipulation of Settlement dated as of November 25, 2014 (Dkt. No. 111-1) (the "Stipulation"), and filed with the Court.

[2] Filed simultaneously herewith is Lead Plaintiff's Notice of Motion and Motion for (1) Final Approval of Class Action Settlement; and (2) Approval of the Plan of Allocation of Settlement Proceeds and Memorandum of Points and Authorities in Support Thereof ("Settlement Motion").

COHEN MILSTEIN
SELLERS & TOLL PLLC
ATTORNEYS AT LAW

1

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Lead and Liaison Counsel ("Plaintiff's Counsel") respectfully submit this memorandum of points and authorities in support of their request for an award of attorneys' fees of 29% of the settlement fund plus their litigation expenses of $117,986.29 plus interest at the same rate and for the same period of time as that earned by the settlement fund until paid.  The substantial and certain all-cash $8 million recovery was obtained as a result of significant effort by Lead Counsel, including an exhaustive investigation, significant discovery, and arm's-length negotiation.  *See* Declaration of Daniel S. Sommers in Support of Lead Plaintiff's Notice of Motion and Motions for (1) Final Approval of Class Action Settlement; (2) Approval of the Plan of Allocation of Settlement Proceeds; and (3) Award of Attorneys' Fees and Expenses ("Sommers Decl.") at ¶¶ 17-50.  In particular, this Settlement was achieved only after (1) complex and hard-fought litigation, including substantial resources devoted to investigating Lead Plaintiff's claims, interviewing fifty-six witnesses, and drafting a detailed, 100-page complaint citing to the statements of thirteen percipient fact witnesses, preparing an extensive opposition brief in opposition to defendants' motion to dismiss; preparing for and presenting oral argument at the hearing on that motion; and thereafter reviewing and analyzing almost 300,000 pages of documents produced through Lead Counsel's discovery requests, and (2) protracted arm's-length settlement negotiations and formal mediation under the guidance of a well-established mediator. *Id*. at ¶¶ 17-22, 34-50.  Absent Lead Counsel's willingness to accept the risks inherent in pursuing the complex legal arguments involved in this action, the Class likely would not have received any recovery and certainly would not have received the Settlement presently before the

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

2

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

Court. Lead Counsel respectfully submit that the substantial benefit achieved, as well as the significant risks Lead Counsel took in pursuing this Action, warrants the requested 29% fee.

Lead Counsel's efforts to date have been without compensation of any kind and their fee has been wholly contingent upon the result achieved.  The requested fee of 29% of the Settlement Fund or $2.32 million plus accruing interests is fair and reasonable, is commensurate with contingent fees granted in this Circuit and elsewhere in similar actions, and is a close approximation of the fee that Plaintiff's Counsel would be entitled to if they charged for their time at their reasonable and customary rates. The amount requested is supported by the extensive efforts of Plaintiff's Counsel in prosecuting this litigation for approximately two years in the face of substantial obstacles, the contingent nature of counsel's representation, the substantial risk that counsel would receive little or no fee or reimbursement of its expenses, and the favorable result obtained for the Class.

The requested fee is a reasonable percentage of the fund recovered and the use of percentage of the fund approach is an appropriate method for awarding attorney's fees in common fund cases. Moreover, the requested fee of 29% (*i.e.*, $2.32 million) is also fair and reasonable under the lodestar cross-check. As of March 31, 2015, Lead Counsel and Liaison Counsel had expended 4,122.75 hours in the investigation, prosecution and resolution of this action, for a lodestar (number of hours multiplied by the per hour rate) of $2,156,956.25. Sommers Decl. at ¶ 101.  The resulting "multiplier" of 1.08 is comparable to and, indeed, substantially less than those approved in similar cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming a fee that yielded a multiplier of 3.65 and noting that multipliers ranging from 1-4 are normally applied in common fund cases); *Bayat v. Bank of the*

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

3

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

*West*, No. C–13–2376 EMC, 2015 WL 1744342, at *9-10 (N.D. Cal. Apr. 15, 2015) (approving a 1.5 multiplier in a lodestar cross-check analysis).

In addition, the expenses for which reimbursement are sought are reasonable and were necessarily incurred for the prosecution of this case.  Sommers Decl. at ¶¶108-11.

Significantly, Lead Plaintiff supports Lead Counsel's fee and expense requests.  *See* Sommers Decl. at Ex. B (Declaration of Mario Rodriguez, Chief Investment Officer of Boilermaker-Blacksmith National Pension Trust, In Support of Lead Plaintiff's Notice of Motion for Final Approval of Class Action Settlement and Lead Counsel's Request for an Award of Attorneys' Fees and Expenses) ("Boilermaker-Blacksmith Declaration").  For these reasons and those set forth below, Lead Counsel respectfully request that its request for an award of attorneys' fees and reimbursement of expenses be granted.

## II.   THE REQUEST FOR AWARD OF ATTORNEYS' FEES AND COSTS SHOULD BE GRANTED IN THIS ACTION

### A.   Nature of the Action

This case is a federal securities class action on behalf of Lead Plaintiff and all persons or entities who purchased Impax Laboratories, Inc.'s ("Impax" or the "Company") common stock on the NASDAQ during the period between June 6, 2011 and March 4, 2013, inclusive (the "Class Period") and were injured thereby (the "Class"). The Consolidated Class Action Complaint for Violations of the Federal Securities Laws (Dkt. No. 63) (the "Complaint") was filed on September 13, 2014 and alleges that Defendants Impax, Larry Hsu ("Hsu"), and Arthur Koch made a series of materially false and misleading statements and omissions of material facts during the Class Period which artificially inflated the value of Impax common stock. More specifically, the Complaint alleges that Defendants issued false and misleading information to investors by failing to disclose egregious, pervasive, and chronic noncompliant conditions at its

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

4

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

Hayward manufacturing facility, as well as the Company's lack of capacity to remedy those issues. Later disclosures caused the price of Impax common stock to decline, causing injury to Lead Plaintiff and the Class.[3]

### B. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

An attorney who maintains a suit resulting in the creation of a fund or benefit in which others have a common interest is entitled to obtain reasonable fees from that common fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Indeed, it has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West,* Inc., 557 F.2d 759, 769 (9th Cir. 1977). The Ninth Circuit has specifically found that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS"). This rule, known as the "common fund" doctrine, is firmly rooted in American case law. *See, e.g., Trustees v. Greenough*, 105 U.S. 527 (1882); *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

In addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of people, and to discourage future alleged misconduct of a similar nature. *See, e.g., Dolgow v. Anderson*, 43 F.R.D. 472, 481-84 (E.D.N.Y. 1968). Indeed,

---

[3] The details of the procedural history of this case are described in the accompanying Sommers Declaration.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

5

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *In re Versata, Inc. Sec. Litig.*, No. C 01–1439, 2001 WL 34012374, at *1 (N.D. Cal. Aug. 20, 2001) (same).

In the Ninth Circuit, district courts retain discretion to award attorneys' fees in common fund cases based upon either the percentage-of-fund or lodestar method.  *See WPPSS*, 19 F.3d at 1296.  However, "use of the percentage method in common fund cases appears to be dominant" and its "advantages . . . have been described thoroughly by other courts."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1047 and *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374–77 (N.D.Cal.1989)).

## C.    A Percentage of 29% of the Fund Created Is Reasonable in This Case

While the ultimate determination of the proper amount of attorneys' fees rests within the sound discretion of the district court (*see Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012)), the guiding principle in this Circuit is that a fee award should be "'reasonable under the circumstances.'"  *Id.* at 653; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). The Ninth Circuit has approved a number of factors that are relevant to the district court's determination including: (1) the result achieved, (2) the risk of continued litigation, (3) the financial burden of contingent representation, and (4) customary fees awarded in similar cases. *See Vizcaino*, 290 F.3d at 1048-50; *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175-76 (S.D. Cal. 2007) (listing the same 4 factors, plus a lodestar cross-check analysis); *see also In re Charles Schwab Corp. Sec. Litig.*, No. C 08–01510, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011) (in awarding attorney's fees, courts may consider "'the quality of the

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

6

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment'"). As demonstrated below, application of these factors confirms the reasonableness of a 29% fee.

### 1. The Results Achieved and the Benefit Obtained for the Class

Courts have consistently recognized that the result achieved is a major factor to be considered in determining the reasonableness of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1050. Lead Counsel reached a Settlement that secured $8 million for the Class. This was a substantial amount of the potential recovery, given the risks of continued litigation in the case. Sommers Decl. at ¶¶ 73-95.

The $8 million recovery obtained by Plaintiffs in this case represents approximately 10.8% to 14.8% of total estimated damages. *Id.* at ¶ 53. Courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties" as part of their analysis evaluating the adequacy of a settlement amount. *Rodriguez*, 563 F.3d at 965 (approving a 10% recovery in an antitrust case). This is so because the evaluation of a settlement amount should be targeted toward evaluating "'the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties,'" and that the settlement as a whole is fair, reasonable and adequate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted). Here, the settlement amount of 10.8% to 14.8% of total estimated damages represents a good recovery for the proposed settlement Class because it falls within the range of settlements approved in this Circuit as well as in other district courts for securities class actions. *See, e.g. Omnivision*, 559 F. Supp. 2d at 1042 (plaintiffs' estimate of damages was $151.8 million and the $13.75 million settlement represented "just over 9% of the

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

7

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

maximum potential recovery" which was "reasonable" and "higher than the median percentage of investor losses recovered in recent shareholder class action settlements" even after subtracting attorneys' fees and costs); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (plaintiffs had obtained 13% recovery of maximum estimated damages in case which the court held was "within the range of reasonableness") (citing cases); *In re Sturm, Ruger, & Co., Inc. Sec. Litig.*, No. 09-cv-1293, 2012 WL 3589610, at *8 (D. Conn. Aug. 20, 2012) (affirming the parties' finding that a settlement obtaining 3.5% of the "most aggressive estimate of maximum provable damages … exceeds the average recovery in shareholder litigation" and citing cases to support the reasonableness of 3% to 7% recoveries); *Louisiana Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, No. 03–CV–4372, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) (approving settlement at "slightly below 10% of the total realizable value of the action" which was "well over the average settlement amounts in securities fraud class actions").  This analysis supports the conclusion that the result obtained by Lead Counsel was indeed a good one for the Class.

### 2.     The Risks to Continued Litigation

The risks to continued litigation in this case were material.  Securities class actions are, in general, extremely risky.[4]  In fact, approximately 48% of securities fraud cases are dismissed at the motion to dismiss stage.  Dr. Jordan Milev, et al., *Recent Trends in Securities Class Action Litigation: 2014 Year-End Review* at 18 Figure 15 (NERA Economic Consulting Jan. 20, 2015) ("NERA  Mid-Year  2011"),  *available  at*  http://www.nera.com/content/dam/nera/publications/2015/Full_Year_Trends_2014_0115.pdf.  Moreover, a meritorious case can be lost at trial. *See, e.g., In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486, 2007 WL 4788556 (N.D. Cal. Nov.

---

[4] Numerous cases have recognized that risk, as well as the novelty and difficulty of the issues presented, are important factors in determining an appropriate fee award.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1048; *WPPSS*, 19 F.3d at 1299-1301. Uncertainty that a recovery ultimately would be obtained is highly relevant in determining risk.  *WPPSS*, 19 F.3d at 1300.

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

8

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs and the action was dismissed).  Similar risks were present here.

Moreover, there was the very real risk in this case that even if Lead Plaintiff prevailed at trial, Defendants would move to have the verdict overturned or appealed, which could take years to resolve.  Sommers Decl. at ¶¶ 97-100.  These risks are not merely theoretical in securities class actions.  For example, in *In re Apple Computer Sec. Litig.*, No. 84-CV-20148, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991), a case litigated and tried in this Circuit, the jury rendered a verdict for plaintiffs after years of litigation and an extended trial.  Based upon the jury's findings, recoverable damages would have exceeded $100 million.  However, the district court overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant

Beyond these eventual hurdles, there were very real immediate hurdles to continued litigation in this case.  Defendants here adamantly denied liability and asserted that they had absolute defenses to Lead Plaintiff's claims, including most notably, their argument that they identified exculpatory evidence in the record demonstrating Impax executives' honest belief in the accuracy of their statements as well as data demonstrating that those statements were actually true.  *See* Sommers Decl. at ¶¶ 78-91; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (concluding that the district court properly weighed and found sufficient risk to support fee award by evaluating defendant's belief that it had strong defense to the merits of plaintiffs' claims).

Moreover, despite Lead Plaintiff's firm belief in the merits of its claims, Lead Plaintiff faced significant hurdles to successfully proving elements of its claims at trial.  Though the Court denied in large part Defendant's motion to dismiss on April 18, 2014, the Court's ruling was

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

9

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

based on the pleadings only, which left all of Defendants' arguments available to re-raise later in the litigation.  Sommers Decl. at ¶ 76.  Moreover, there was the risk that a jury would find for Defendants that all alleged false and misleading statements were too "soft" or immaterial, or that accompanying risk disclosures adequately warned investors.  *Id.*

Lead Plaintiff also believed that based on Phase I of discovery that it could demonstrate to a jury that the FDA found repeat examples of observations in every inspection.  *Id.* at ¶¶ 77-79.  Defendants, however, vigorously denied that any of the alleged statements were false at the time they were made and numerous documents produced in discovery support Defendants' claims that Impax was successfully remediating a number of the FDA's observations and worked extensively to lift the Warning Letter.  *Id.* at ¶¶ 80-84.  Moreover, Defendants could point to evidence that Impax was working to remediate its deficiencies and was spending an enormous amount both in human resources and in dollars to fix these problems, and that Defendants had a sound factual basis to believe that Impax was making progress in this regard.  *Id.* at ¶¶ 80-82, 86-89.  For example, there were other documents that appear to demonstrate that starting in 2011, Impax spent over $16 million on remediation and quality improvement efforts.  *Id.* at ¶ 82.  Most notably, Impax received a letter from the FDA in June 2012 acknowledging that Impax had successfully implemented the corrective actions to remediate the Warning Letter observations but due to new, unrelated, and unforeseen – yet potentially significant – observations, the FDA chose not to close out the Warning Letter after the 2012 inspection.  *Id.* at ¶ 83.

Lead Plaintiff also believes that it developed strong evidence that Defendants were well-aware of these recurring problems and Impax's inability to fix them, but that substantial risks to proving this at trial still remained.  *Id.* at ¶¶ 78-91.  By contrast, Defendants intended to point to numerous documents produced during Phase I discovery that Defendants believed to be

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

10

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

consistent with a good faith belief by Defendants that Impax was making progress in fixing its problems and that it had good reason to believe it could timely do so.  *Id.* at ¶¶ 86-89.

Lead Plaintiff further recognizes that it had not identified a motive for the alleged fraud during Phase I of discovery, such as insider trading or the use of company stock to finance a corporate transaction.  *Id.* at ¶ 90.[5]  This factor therefore had to be taken into account as well.

Finally, Lead Plaintiff also recognized the risk of proving loss causation and damages at trial.  Throughout the Class Period, Impax informed its investors that the Company faced the real risk that the FDA might not be satisfied with the Company's remediation efforts, and Defendants claimed that these disclosures defeated any showing of loss causation since further decisions by the FDA were unpredictable and out of Defendants' control.  *Id.* at ¶¶ 92-95.

While Lead Plaintiff believes its case was compelling, it is impossible and, indeed, would have been irresponsible to ignore the substantial risk that a jury would disagree.  There were substantial risks to Lead Plaintiff's pursuit of its claims both before and well after trial.  For these reasons and others described in the Sommers Declaration, there were substantial risks to continued litigation and reaching settlement provided a significant benefit to the Class.

### 3.    The Financial Burden of Contingent Fee Representation and the Risk of Nonpayment

In addition to the risks associated with complex litigation, "the risk of non-payment or reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining the appropriateness of counsel's proper fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *68-*69 (C.D. Cal. June 10, 2005); *see, e.g.*, *In re*

---

[5] Moreover, Lead Plaintiff at the pleading stage had alleged scienter based on a core operations theory; yet Ninth Circuit law has established that "proof under [the core operations] theory is not easy," and suffices to establish a strong inference of scienter only in "rare circumstance[s]." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014).

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

11

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

1   *Omnivision Techs.*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-301. "Contingent fees

2   compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-

3   handed, the higher the award must be to attract competent and energetic counsel." *Silverman v.*

4   *Motorola Solutions, Inc.*, Nos. 12-2339 & 12-2354, 2013 U.S. App. LEXIS 16878, at *5-*6 (7th

5   Cir. Aug. 14, 2013).

6

7        It is an established practice in the private legal market to reward attorneys for taking on

8   the risk of non-payment by paying them a premium over their normal hourly rates for prevailing

9   in contingency cases. *See* Richard Posner, Economic Analysis of Law §21.9, at 534-35 (3d ed.

10  1986). Contingent fees that may far exceed the market value of the services rendered on a non-

11  contingent basis are accepted in the legal profession as a legitimate way of assuring competent

12  representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether

13  they win or lose.  *WPPSS*, 19 F.3d at 1299.

14

15       There are numerous cases where plaintiffs' counsel in contingent cases  have received no

16  compensation after the expenditure of thousands of hours and substantial amounts in litigation

17  costs. Lead Counsel is aware of many hard-fought lawsuits where, because of the discovery of

18  facts unknown when the case was commenced, or changes in the law during the pendency of the

19  case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts

20  of members of the plaintiffs' bar produced no fee for counsel.

21

22       Indeed, the risk of no recovery in complex cases of this type is very real. As the court in

23  *Xcel* recognized, "[p]recedent is replete with situations in which attorneys representing a class

24  have devoted substantial resources in terms of time and advanced costs yet have lost the case

25  despite their advocacy." *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp.

26  2d 980, 994 (D. Minn. 2005). For instance, in the *Oracle Securities Litigation*, plaintiffs

27

28

12

expended tens of millions of dollars in attorney time and expenses only to see the case dismissed in its entirety at summary judgment. *In re Oracle Corp. Sec. Litig.*, No. C 01-988 SI, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010).   Similarly, lead counsel in *BankAtlantic Securities Litigation* expended millions litigating through trial and a jury verdict in plaintiffs' favor, only to have the court overturn the verdict and enter judgment for the defendants, a judgment which was upheld on appeal. *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV-UNGARO, 2011 U.S. Dist. LEXIS 48057 (S.D. Fla. Apr. 25, 2011), *aff'd sub. nom, Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d  713 (11th Cir. 2012).[6] Plaintiffs' Counsel also faced similar risks of non-payment in this case.   As such, while Plaintiffs' Counsel were confident in the strength of the case, they could not ignore the practical risk that there would be no recovery after many more years of costly litigation.

### 4.     A 29% Fee Award is Consistent with the Market Rate in Similar Complex, Contingent Litigation

Courts also look to fees awarded in comparable cases to determine if the requested fee is reasonable.  A fee based on the percentage method is also entirely consistent with negotiated fees in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. *See, e.g., In re RJR Nabisco Sec. Litig.*, No. MDL 818, 1992

---

[6] *See also In re JDS Uniphase Corp. Sec. Litig*., 2007 WL 4788556 (defense verdict by jury); *Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1233 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (verdict against two individual defendants, but court vacated judgment on motion for judgment notwithstanding the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10, 18 (1st Cir. 1990) (where the class won a substantial jury verdict and motion for J.N.O.V. was denied, on appeal the judgment was reversed and the case was dismissed – after 11 years of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (multimillion dollar judgment reversed after lengthy trial).

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

13

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

U.S. Dist. LEXIS 12702, at *20 (S.D.N.Y. Aug. 24, 1992).  Here, Plaintiff's Counsel request a

fee of 29% of the recovery achieved, a fee in securities fraud cases that has been often approved

in this district as well as by the Ninth Circuit and in other courts.  For example, greater fees than

that requested here have been granted in the following cases:

> ➢ *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) (upheld fee award of 33.3% of $1.725 million settlement);

> ➢ *In re Gilead Scis. Sec. Litig.*, No. C-03-4999 (N.D. Cal. Nov. 5, 2010) (recovered $8.25 million; court awarded 30% in fees, plus expenses);

> ➢ *In re Terayon Commc'n Sys. Inc. Sec. Litig.*, No. C-00-1967 (N.D. Cal. Oct. 3, 2007) ($15 million recovery; court awarded 30% in fees, plus expenses);

> ➢ *Thomas & Thomas Rodmakers Inc., et. al. v. Newport Adhesives and Composites, Inc., et al.*, Case No. 99-cv-07796 (C.D. Cal. Oct. 17, 2005) (awarded fees of 33% of $36.25 million recovery, plus expenses);

> ➢ *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) (awarding one-third of $27,783,000 settlement fund);

> ➢ *Broderick v. Mazur (PHP Healthcare)*, No. 98-cv-1658 (C.D. Cal. Apr. 27, 2004) (awarded fees of 30% of $4.5 million recovery, plus expenses);

> ➢ *Siracusano v. Matrixx Initiatives, Inc.*, No. 04-cv-0886 (D. Ariz. Nov. 13, 2012) ($4.5 million recovered, awarded fees of 30%, plus expenses);

> ➢ *In re AMERCO Sec. Litig.*, No. 04-2182 (D. Ariz. Nov. 2, 2006) (awarded fees of 30% of a $7 million recovery, plus expenses);

> ➢ *N. Point Firefighters' Pension-Local Option Plan v. Fushi Copperweld, Inc.*, No. 11-cv-00595 (M.D. Tenn. May 12, 2014) (awarded fees of 33.3% of a $3.25 million recovery, plus expenses);

> ➢ *Landmen Partners Inc. v. Blackstone Grp.*, No. 08-cv-03601 (S.D.N.Y. Dec. 18, 2013) (awarded fees of 33.3% of $85 million, plus expenses);

> ➢ *Eshe Fund v. Fifth Third Bancorp*, No. 08-cv-421 (S.D. Ohio Nov. 20, 2013) (awarded fees of 33.3% from a $16 million recovery, plus expenses);

> ➢ *In re Constellation Energy Grp., Inc. Sec. LItig.*, No. 1:08-cv-02854 (D. Md. Nov. 4, 2013) (arded fees of 33.3% of $4 million recovery, plus expenses); and

> ➢ *Levine v. Atricure, Inc.*, No. 1:06-cv-14324 (S.D.N.Y. May 27, 2011) (awarded fees of 33.3% of $2 million, plus expenses).

COHEN MILSTEIN
Sellers & Toll PLLC
Attorneys At Law

14

While courts in the Ninth Circuit often reference 25% as the "benchmark" for fees in class actions, there is ample justification here for the award of the requested 29% fee given, among other things, including the results obtained in light of the maximum provable damages, the challenges faced by Lead Counsel, the speed and efficiency with which the case was handled, and the fact that the multiple sought is only a modest enhancement over Plaintiff's Counsel's actual lodestar.  *See* Section II.D., below

### 5.	The Skill Required and the Quality and Efficiency of the Work

The "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *39 (citation omitted). Lead Counsel has a strong reputation for expertise in prosecuting securities class actions.  *See* Sommers Decl. at Ex. D (Resume of Cohen Milstein).  From the outset of this case, Lead Counsel engaged in a concerted effort to obtain the maximum recovery for the class. Lead Counsel devoted a substantial amount of its own money and attorney and staff hours and marshalled considerable resources for the prosecution of this matter.  Because of Lead Counsel's diligent efforts on behalf of the class and their skill and reputations, Lead Counsel was able to negotiate a favorable settlement under difficult and challenging circumstances. Such quality, efficiency, and dedication should be rewarded. *See, e.g., In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 195 (E.D. Pa. 2000) (noting quality of representation as a particular factor in support of awarding 30% of common fund in fees because counsel worked with opposing counsel in joint submissions regarding settlement and under tight deadlines).

The quality of the representation provided by Lead Counsel is reflected in their substantial investment of time and study to master Food and Drug Administration ("FDA") investigations, regulations, and FDA noticing process and to apply this regulatory system to a

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

15

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

vast set of facts about the minutiae of daily drug manufacturing processes – all of which resulted in a complaint detailing 100 pages of allegations. *See* Sommers Decl. at ¶¶ 18, 48, 102-03.  In addition, Lead Counsel successfully defeated the bulk of Defendants' motion to dismiss and argued against the motion to dismiss while drawing from numerous examples directly from the alleged facts in the complaint to support Lead Plaintiff's claims.  *Id.* at ¶ 102-03. Most importantly, the quality of representation is reflected in the $8 million all-cash settlement that represents a significant portion of the maximum recoverable damages in a case where Defendants aggressively fought virtually every element of Lead Plaintiff's claims.  *Id.*  at ¶¶ 3, 96.

In evaluating the quality of Lead Counsel's work it is also appropriate to consider the quality of opposing counsel and the resources opposing counsel devoted to this case. *See In re The Mills Corp. Sec. Litig.*, No. 06-cv-0007, 2009 WL 5091931, at *17 (E.D. Va. Dec. 23, 2009) (citing *In Re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y.1985) ("quality of opposing counsel is a factor to be considered in evaluating Lead Counsel's performance"). Defendants in this case were represented by a team of attorneys from Latham & Watkins, one of the country's most respected law firms. *See Headlands Reserve, LLC v. Center For Natural Lands Mgmt*, 523 F. Supp. 2d 1113, 1130 (C.D. Cal. 2007) ("Latham & Watkins [is] a prestigious law firm with offices all over the world."). Defendants' counsel aggressively litigated all aspects of this case.  Sommers Decl. at ¶¶ 24-46, 56-60.  Defendants zealously briefed and presented oral argument in favor of their motion to dismiss.  *Id.* at ¶¶ 24-27.   As detailed in the Sommers Declaration, Defendants thoroughly briefed their position in their mediation submission and appended numerous exhibits in support of their defenses.  *Id.* at ¶¶ 56-59.

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

16

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

For these reasons, the quality, vigorousness and cost of opposing counsel's defense of their clients supports the reasonableness of Lead Counsel's request for fees and reimbursement of expenses.

### D.     The Requested Fee Is Reasonable Under a Lodestar Cross-Check Analysis

Although Lead Counsel seek approval of a fee based on a percentage of the recovery, "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048.  In *Vizcaino*, the Ninth Circuit noted that an analysis of the "lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement." 290 F.3d at 1050 n.5.

The lodestar method "calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  "Calculation of the lodestar, however, is simply the beginning of the analysis." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986).  In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the risk of non-payment, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations.  *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998).

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

17

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

To account for the foregoing factors the court then applies an appropriate multiplier to the lodestar number.

The lodestar of Plaintiff's Counsel in this case is $2,156,956.25.   Sommers Decl. at ¶ 101.  Therefore, the requested fees of $2.32 million are a multiplier of 1.08 and thus nearly the same amount that Plaintiff's Counsel have risked in attorney time spent on the case.  Indeed, the normal range of multipliers in the Ninth Circuit is higher than Plaintiff's Counsel's multiplier here.  *See Vizcaino*, 290 F.3d at 1052-54 (approving a 3.65 multiplier); *Bank of the West*, 2015 WL 1744342, at *9-10 (Chen, J.) (approving a 1.5 multiplier in a lodestar cross-check analysis).[7]

The lodestar cross-check thus supports approval of the 29% fee requested in this case.

### E.     The Reaction of the Class Supports Approval of the Attorneys' Fees

Another factor courts consider when determining whether to approve a settlement is the reaction of the class.  *See Mego Fin.*, 213 F.3d at 459; *In re Skilled Healthcare Grp., Inc. Sec. Litig.*, No. CV-09-5416, 2011 WL 280991, at *4 (C.D. Cal. Jan. 26, 2011); *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001).   A "relatively small number" of objections is "an indication of a settlement's fairness."  *Id.* (citing Herbert Newberg & Alba Conte, 2 NEWBERG ON CLASS ACTIONS §11.48 (3d ed. 1992)); *see also Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15, 2006 WL 5062697, at *6 (S.D. Ill. June 5, 2006) (nine objections is a "minuscule" amount).   Concomitantly, "[t]he fact that some class members object to the Settlement does not by itself prevent the court from approving the agreement."  *Brotherton*, 141 F. Supp. 2d at 906.

---

[7] *See also Pokorny v. Quixtar, Inc.*, NO. C 07–0201, 2013 WL 3790896, at *2 (N.D. Cal. July 18, 2013) (a multiplier of just under 2.2 is "well within the range of reasonableness") (citing case law with multipliers of 2.99 to 3.89); *Mitchell v. Bankfirst*, No. C-97-1421, 2003 WL 921408, at *1 (N.D. Cal. Feb. 28, 2003) (multiplier of 1.19 reasonable under Ninth Circuit factors).

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

18

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

In this case, the Class was notified of the Settlement by first-class mail, publication, and the Internet.  The Notice was sent to over 38,408 potential Class Members and was both published on *Investor's Business Daily* and transmitted over the *Business Wire* on February 20, 2015.  Sommers Decl. at Ex. C (Declaration of Justin Hughes on behalf of Kurtzman Carson Consultants LLC ("KCC Decl.") at ¶¶ 6-7).  Moreover, Lead Counsel caused to be established a dedicated website, www.ImpaxSecuritiesLitigation.com, to assist potential Class Members.  KCC Decl. at ¶ 9.  The website was operational beginning on February 13, 2015, and is accessible 24 hours a day, 7 days a week.  *Id.* The website lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the Court's June 22, 2015 fairness hearing. *Id.*

Although the time for objections has not yet expired, the Settlement enjoys overwhelming support – to date there has been only one purported request for exclusion and objection.   Sommers Decl. at ¶ 67 & n.2.[8]  Thus, the reaction of the Class weighs heavily in favor of approving the Settlement.  *See Omnivision*, 559 F. Supp. 2d at 1043 ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members.'"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (same).[9]

---

[8] The last day for filing objections is May 21, 2015.  *See* Sommers Decl. at ¶¶ 5, 67.  To the extent that any objections are submitted, Lead Counsel will file an appropriate response by June 4, 2015, as provided by the schedule in this Court's order dated January 16, 2015.

[9] Even if objections are received, courts routinely approve settlements if they otherwise meet the fairness requirements.  *See, e.g.*, *In re Mfrs. Life Ins.*, No. 1109, 96-CV-230 BTM(AJB), 1998 WL 1993385, at *7 (S.D. Cal. Dec. 21, 1998) ("[A] minuscule number of objectors is another factor favoring approval."); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (adequacy of settlement "persuasive" when 16% of class objected); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (fact that only 10% of class objected "strongly favors settlement").

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

18

19

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

Likewise, as of this date, no objections have been received as to any aspect of the request for attorneys' fees or for reimbursement of expenses.

Because of the overwhelmingly positive reaction of the Class, the Court should grant final approval of Plaintiff's Counsel's fee petition and request for reimbursement of expenses.

### F.    Lead Plaintiff, an Institutional Investor, Supports Lead Counsel's Request for Attorneys' Fees and Expenses

The fact that the Lead Plaintiff endorses this application is further support of its propriety.  Here, Lead Plaintiff is precisely the type of institutional investor that the PSLRA intended to serve as lead plaintiff and fully supports this Court's granting of Lead Counsel's request for attorneys' fees and expenses.  The PSLRA favors the involvement of institutional investors in as part of securities fraud litigation.  *See* H.R. Rep. No. 104-369, at 34 (1995) (Conf. Rep.) (the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at stake") (reprinted at 1995 U.S.C.C.A.N. 730, 733). The PSLRA lead plaintiff appointment process was designed to "give preference to institutional investors which would be in a better position to manage the litigation and to limit the influence of lawyers."  *Miller v. Ventro Corp.*, No. 01-CV-1287, 2001 WL 34497752, at *6 (N.D. Cal. Nov. 28, 2001); *see also Sutterfield v. Micromuse, Inc.*, No. C 04–0893 SBA, 2004 WL 6058065, at *10 (N.D. Cal. July 13, 2004) (the PSLRA favors institutional investors because "[i]nstitutional investors have incentives to monitor their suits closely because of their substantial stakes in the stock at issue, thereby eliminating frivolous tactics and settlements that inflate attorneys' fees").

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

20

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

As such, the participation of Lead Plaintiff, an institutional investor, and its support of Lead Counsel's request for attorneys' fees and expenses weighs in this Court granting Lead Counsel's request. *See* Sommers Decl. at Ex. B (Boilermaker-Blacksmith Declaration).

## III.     THE EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

The standard for determining whether expenses are compensable in a common fund case of this type is whether the expenses are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'") (citation omitted); *see also Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (citation omitted); *TBK Partners, Ltd. v. Warshow*, No. 77 Civ. 972, 1977 U.S. Dist. LEXIS 13597, at *8 (S.D.N.Y. Oct. 6, 1977) (noting in securities case that "of course, [plaintiffs' counsel] are also entitled to reimbursement for their expenses").

Plaintiff's Counsel requests the reimbursement of $117,986.29 in total expenses. The expenses for which Plaintiff's Counsel seeks payment for are the type of expenses routinely charged to hourly clients and, therefore, should be paid out of the common fund. These expenses incurred were necessary – without these expenditures Lead Plaintiff's case would have been substantially weaker and any settlement reached would have almost certainly been less favorable to the Class. Plaintiff's Counsel incurred expenses that were necessary to zealously litigate Lead Plaintiff's claims in this action. Sommers Decl. at ¶¶ 108-11. A substantial portion of the

COHEN MILSTEIN
SELLERS & TOLL PLLC
Attorneys At Law

21

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

expenses incurred related to the retention of FDA and damages experts. *Id.* at ¶ 108. These experts were essential to the ability of Lead Counsel to investigate the case, craft a detailed complaint that clearly explained complex FDA-related issues, to rebut arguments raised by Defendants on these topics, and to understand and properly present an argument setting forth the damages suffered by investors. *Id.* Other expenses included computerized legal and factual research fees, and travel expenses which were incurred in connection with attendance at Court hearings and the mediation. *See* Sommers Decl. at Ex. E (Lead Counsel Fee Decl. at ¶ 7).[10]

These costs are, in fact, less than those awarded in other cases with comparable and lesser settlement amounts in securities class actions. *See, e.g. In re Gilead Sciences Sec. Litig.*, No. C-03-4999 (N.D. Cal. order Nov. 5, 2010) (Dkt. No. 282) (expenses of $282,906 awarded in case with $8.25 million settlement); *In re AMERCO Sec. Litig.*, No. 04-2182 (D. Ariz. Order Nov. 3, 2006) (Dkt. No. 290) (expenses of $598,077 awarded in case with $7 million settlement); *Broderick v. Mazur (PHP Healthcare)*, No. 98-cv-1658 (C.D. Cal. order Apr. 26, 2004) (Dkt. No. 186) (expenses of $262,245.07 awarded in case with $4.5 million settlement). Moreover, they are less than the maximum amount of potential expenses disclosed to the Class in the Notice and, to date, no Class Member has voiced any objection to the reimbursement of these expenses. Sommers Decl. at ¶ 110.

## IV.   CONCLUSION

For the foregoing reasons, as well as those stated in the Settlement Motion and Sommers Declaration, Plaintiff's Counsel respectfully request that the Court award attorneys' fees of 29% of the Settlement Fund and expenses of $117,986.29, plus interest.

---

[10] As of May 4, 2015, KCC has incurred approximately $82,000 in notice and administration fees and costs. *See* KCC Decl. at ¶ 12. Those expenses are payable from the Settlement Fund. *See* the Stipulation at ¶ 8; Order for Notice and Hearing (Dkt. No. 119) (incorporating the Stipulation's approval of notice and administration fees and costs).

1    DATED:  May 7, 2015

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERA LLP


By:   __/s/ Solomon B. Cera_____
          Solomon B. Cera

Solomon B. Cera (State Bar No. 99467)
Louis A. Kessler (State Bar No. 243703)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Fax: (415) 777-5189
Email: scera@cerallp.com
Email: lakessler@cerallp.com

*Liaison Counsel for Lead Plaintiff Boilermaker
Blacksmith National Pension Trust*

**COHEN MILSTEIN SELLERS & TOLL
PLLC**

Steven J. Toll (admitted *pro hac vice*)
Daniel S. Sommers (admitted *pro hac vice*)
Genevieve Fontan
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Christopher Lometti (admitted *pro hac vice*)
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745

*Lead Counsel for Lead Plaintiff Boilermaker
Blacksmith National Pension Trust*

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

23

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC

1

**SIGNATURE ATTESTATION**

2       I am the ECF User whose identification and password are being used to file the foregoing

3   document.  Pursuant to General Order No. 45, Section X(B) regarding signatures, I, Solomon B.

4   Cera, attest that concurrence in the filing of this document has been obtained.

5

6

7   DATED:  May 7, 2015                              _____/s/ Solomon B. Cera_____
                                                      Solomon B. Cera

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cohen Milstein
Sellers & Toll PLLC
Attorneys At Law

24

NOTICE OF MOTION AND MOTION FOR
AN AWARD OF ATTORNEYS' FEES
CASE NUMBER: 13-cv-01037 EMC